**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HAZEL TAPAY ASUFRIN, | CIVIL ACTION 1:15-cv-09077 |
| Plaintiff, | |
| v. | COMPLAINT |
| ROUNDPOINT MORTGAGE SERVICING CORPORATION, EXPERIAN INFORMATION SOLUTIONS, INC. and EQUIFAX INFORMATION SERVICES LLC., | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

NOW COMES the Plaintiff, HAZEL TAPAY ASUFRIN ("Plaintiff") by and through her attorneys, SULAIMAN LAW GROUP, Ltd., complaining of the Defendants, ROUNDPOINT MORTGAGE SERVICING CORPORATION ("RoundPoint"), EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian"), and EQUIFAX INFORMATION SERVICES LLC ("Equifax") (collectively, "Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking actual, statutory, punitive damages, attorney's fees and costs for Defendants' violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681, RoundPoint's violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692, and RoundPoint's violations of the Bankruptcy Discharge Injunction pursuant to 11 U.S.C. §524.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

1

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff resides in this District and Defendants' conduct harmed Plaintiff in this District.

**PARTIES**

4.  Plaintiff, Hazel Tapay Asufrin, is a consumer and natural person over 18 years of age who, at all times relevant, owned and resided at the property located at 4811 N. Olcott Avenue, Unit 614, Harwood Heights, Illinois 60706 ("subject property").

5.  Defendant RoundPoint is a Florida corporation with its principal place of business at 5016 Parkway Plaza Blvd. Ste 200, Charlotte, North Carolina 28217. RoundPoint is a foreign company whose primary business is the collection of debts owed to others and a creditor, lender, and servicer of mortgage loans across the country, including the State of Illinois. RoundPoint is a furnisher of credit information to the major credit reporting agencies, including Experian and Equifax.

6.  Defendant Experian is a corporation incorporated in the state of Ohio and is authorized to do business in the State of Illinois. Experian is in the business of compiling and maintaining files on consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

7.  Defendant Equifax is a Delaware limited liability company with its principal place of business in Atlanta, Georgia. Equifax is in the business of compiling and maintaining consumer files for the purpose of furnishing credit information about consumers to third parties on a nationwide basis, including in the State of Illinois.

**BANKRUPTCY CASE**

8. On October 26, 2009, Plaintiff executed a mortgage and note in the amount of $292,890.00 ("subject loan" or "subject debt") in favor of Draper and Kramer Mortgage Corporation dba 1st Advantage Mortgage, secured by the subject property.

9. Sometime before Plaintiff filed bankruptcy, the subject loan was transferred to Bank of America, N.A. ("BOA").

10. On August 20, 2013, Plaintiff filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 13-33247 ("bankruptcy").

11. Schedule D of the bankruptcy petition listed the subject loan, a secured pre-petition debt to BOA, in the amount of $277,190.00, secured by the subject property. *See* Exhibit A, a true and correct copy of Schedule D filed in Plaintiff's bankruptcy case.

12. On August 23, 2013, by listing BOA as a creditor, the Bankruptcy Noticing Center ("BNC") served Defendants with notice of Plaintiff's bankruptcy filing and Plaintiff's Original Plan. *See* Exhibit B, a true and correct copy of the BNC Certificate of Notice establishing service of the notice of filing and Original Plan on Defendants.

13. Plaintiff's Original Plan proposed to treat BOA's claim as follows:

> "Debtor is surrendering the real property located at 4811 N. Olcott Avenue, Unit 614, Hardwood Heights Illinois to Bank of America, N.A. in full satisfaction of its claims." *Id*. at p. 5.

14. On October 1, 2013, the 341 Meeting of Creditors was held with the Chapter 13 Trustee. No representative or attorney from BOA appeared at the 341 Meeting of Creditors.

15. Also, on October 1, 2013, the Plaintiff filed her modified Chapter 13 Plan ("Modified Plan"). *See* Exhibit C, a true and correct copy of the Plaintiff's Modified Plan and BNC Certificate of Notice establishing service of the Modified Plan upon Defendants.

3

16. Plaintiff's Modified Plan proposed to treat BOA's claim as follows:

> "Debtor is surrendering the real property located at 4811 N. Olcott Avenue, Unit 614, Hardwood Heights Illinois to Bank of America, N.A. in full satisfaction of its claims." Id. at p. 5.

17. BOA did not file any objection to Plaintiff's Modified Chapter 13 Plan. At no time did BOA file a proof of claim for the subject debt in Plaintiff's bankruptcy case.

18. On October 23, 2013, Plaintiff's Modified Plan was confirmed by the Honorable Pamela S. Hollis. *See* Exhibit D, a true and correct copy of the Confirmation Order.

19. On May 27, 2014, BOA, through its counsel, presented its Motion for Relief from the Automatic Stay in Plaintiff's bankruptcy to proceed with foreclosure. BOA's motion acknowledged Plaintiff's Chapter 13 Plan and intent to surrender the subject property. *See* Exhibit E, a true and correct copy of BOA's Motion to for Relief from the Automatic Stay filed in Plaintiff's bankruptcy case.

20. On June 4, 2014, the Bankruptcy Court granted BOA's Motion to Modify the Automatic Stay to permit BOA to proceed with foreclosure on the subject property. *See* Exhibit F, a true and correct copy of the Order Modifying Stay entered in Plaintiff's bankruptcy case.

21. Plaintiff fully performed her duties as set forth in her confirmed Chapter 13 Plan.

22. On October 20, 2015, Plaintiff received a Notice of Assignment, Sale or Transfer of Servicing Rights from RoundPoint stating: "You were recently notified by Bank of America that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from Bank of America to RoundPoint Mortgage Servicing Corporation (RoundPoint), effective October 20, 2014." *See* Exhibit G, a true and correct copy of RoundPoint's Notice of Servicing Transfer of the subject loan.

4

23. RoundPoint acquired the servicing rights to the subject loan after Plaintiff was in default on the subject loan.

24. On March 2, 2015, the Bankruptcy Court entered an Order of Discharge in Plaintiff's case of all dischargeable debts, including the subject debt. *See* Exhibit H, a true and correct copy of the Order of Discharge and BNC Certificate of Notice establishing service of the Order of Discharge upon Defendants.

25. The Order of Discharge expressly states:

> "The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor...." *Id.* at p. 2.

26. On March 4, 2015, the BNC served BOA, Equifax and Experian with the Order of Discharge. *Id.* at p. 3.

27. Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect upon the subject loan by BOA or any other party.

28. On April, 22 2015, Plaintiff's bankruptcy case closed.

29. Plaintiff's personal liability on the subject debt was extinguished via her bankruptcy discharge, thus terminating the business relationship with BOA and any of its successors and assigns.

### CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTES TO EXPERIAN

30. On April 21, 2015, after receiving her discharge, Plaintiff pulled her 3 bureau Experian credit report.

5

31. Plaintiff's Experian report revealed that RoundPoint was reporting the subject loan in default and with a high balance. The reporting was inaccurate because the subject loan was discharged in her bankruptcy and should be reported with a zero balance and without negative payment history or other derogatory status.

   **a. Plaintiff's Dispute Letter to Experian**

32. On May 19, 2015, after the subject debt to RoundPoint was discharged, Plaintiff sent a written credit dispute letter to Experian, requesting that her credit file be updated to reflect the zero balance and discharged status of all accounts discharged in her Chapter 13 bankruptcy. Plaintiff also specifically disputed the RoundPoint trade line [**Account # 596100207XXXX***]. Plaintiff attached all relevant bankruptcy documents to her dispute. *See* Exhibit I, a true and correct copy of Plaintiff's May 19, 2015 dispute letter to Experian.

33. Among other things, Plaintiff's dispute letter to Experian stated the following:

   a. "I am enclosing a copy of the Order Discharging Debtor entered on 3/2/2015"
   b. "Please update the subject credit file(s) to reflect the discharged status of the debts;"
   c. "Report a current balance of "0" on all of these accounts that have been discharged in my bankruptcy case;"
   d. "Consequently, I am requesting you to immediately activate the Automated Dispute Resolution System program with respect to their written notice;" and
   e. "Specifically, I am requesting an investigation into the following account: **RoundPoint MTG, account # 596100207XXXX**[1];"
   f. "I request that you forward their letter, and enclosures, to each of the creditors listed in my schedules." and
   g. "If for any reason you decline to send a copy of my letter and the enclosures to any of the creditors, I request that you promptly advise me so that I can take additional steps to protect myself." *Id.*

---

[1] Plaintiff's dispute letter also specifically disputed Bank of America, N.A., account #21371XXXX. This trade line was subsequently updated to accurately reflect $0 balances from all the Plaintiff's credit files pursuant to the FCRA.

34. Plaintiff sent her dispute letter to Experian via certified mail, return-receipt requested. *Id.*

35. Upon information and belief, RoundPoint received notice from Experian within five days of the date Experian received Plaintiff's dispute letter.

**b. Experian's Response to Plaintiff's Dispute Letter**

36. On June 8, 2015, Experian responded to Plaintiff's dispute letter stating that it had updated the trade line and the balance for the RoundPoint account. *See* Exhibit J, a true and correct copy of the pertinent parts of the results of Plaintiff's dispute letter to Experian.

37. Despite Experian's representation that the RoundPoint trade line had been updated to reflect Plaintiff's discharge, the Roundpoint trade line was still reporting the subject debt with a "Account Balance" of $277,190.00 and a "Scheduled Payment Amount" of $2,107.00 from the date of Plaintiff's bankruptcy discharge through April of 2015. *Id.*

38. The reporting of the RoundPoint trade line was still inaccurate as Plaintiff's liability to Roundpoint was discharged in March of 2015 and she was no longer liable on the subject loan. Reporting an "Account Balance," and a "Scheduled Payment Amount" inaccurately implies that Plaintiff was delinquent for the months of March and April of 2015.

39. RoundPoint's trade line also failed to mark the trade line as disputed.

**CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTES TO EQUIFAX**

**a. Plaintiff's Dispute Letter to Equifax**

40. On May 19, 2015, after the subject debt to RoundPoint was discharged, Plaintiff sent a written credit dispute letter to Equifax, requesting that her credit file be updated to reflect the zero balance and discharged status of all accounts discharged in her Chapter 13 bankruptcy. Plaintiff also specifically disputed the RoundPoint trade line [**Account # 596100207XXXX***].

Plaintiff attached the relevant bankruptcy documents to her dispute. *See* Exhibit K, a true and correct copy of Plaintiff's dispute letter to Equifax.

41. Among other things, Plaintiff's dispute letter to Equifax stated the following:

   a. "I am enclosing a copy of the Order Discharging Debtor entered on 3/2/2015;"
   b. "Please update the subject credit file(s) to reflect the discharged status of the debts;"
   c. "Report a current balance of "0" on all of these accounts that have been discharged in my bankruptcy case;"
   d. "Consequently, I am requesting you to immediately activate the Automated Dispute Resolution System program with respect to their written notice;" and
   e. "Specifically, I am requesting an investigation into the following account: **RoundPoint MTG, account # 596100207XXXX**;"
   f. "I request that you forward their letter, and enclosures, to each of the creditors listed in my schedules." and
   g. "If for any reason you decline to send a copy of my letter and the enclosures to any of the creditors, I request that you promptly advise me so that I can take additional steps to protect myself." *Id.*

42. Plaintiff sent her dispute letter to Equifax via certified mail, return-receipt requested. *Id.*

43. Upon information and belief, RoundPoint received notice of Plaintiff's dispute from Equifax within five days of the date Equifax received Plaintiff's dispute.

**b. Equifax's Response to Plaintiff's Dispute Letter**

44. On June 20, 2015, Equifax responded to Plaintiff's dispute letter stating that it had verified that the subject debt belongs to the Plaintiff and additional information has been provided from the original source regarding the subject debt. *See* Exhibit L, a true and correct copy of the results of Plaintiff's dispute letter to Equifax.[2]

---

[2] It should be noted that Trans Union deleted the RoundPoint account trade line associated with the subject debt following its investigation into Plaintiff's dispute letter. Upon information and belief, Trans Union deleted the account because its investigation revealed that the information provided by RoundPoint was inaccurate.

45. Despite its representation that the RoundPoint account was verified, RoundPoint and Equifax were still reporting the subject debt with a "Scheduled Payment Amount" of $2,107.00. *Id*. at p. 2.

46. The reporting of the RoundPoint trade line was still inaccurate as Plaintiff was no longer liable on the subject loan and therefore did not have a "Scheduled Payment Amount" of $2,107.00. Reporting a "Scheduled Payment Amount" inaccurately implies that Plaintiff is responsible for a monthly payment when no such responsibility exists pursuant to his discharge.

47. RoundPoint's trade line also failed to state that the subject debt was subject to a dispute.

### IMPACT OF CONTINUING
### INCORRECT REPORTING ON PLAINTIFF'S CREDIT FILES

48. As of today, the erroneous reporting of the RoundPoint account continues to paint a false and damaging picture of Plaintiff. Defendants have yet to update the RoundPoint account to accurately reflect the discharged status, and correct balances, including the failure to communicate that the subject debt is being disputed.

49. The entire experience has imposed upon Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff hopeless as to her ability to regain her good name and the credit rating that she deserves and has worked hard to earn by completing her Chapter 13 Plan.

50. The inaccurate reporting of the subject debt continues to have significant adverse effect on Plaintiff's credit rating and her ability to obtain financing as it creates a false impression that the RoundPoint account is due and owing, rendering Plaintiff a high risk consumer.

51. As a result of the conduct, actions, and inaction of RoundPoint, Experian, and Equifax, Plaintiff has suffered various types of damages as set forth herein, including specifically out-of-pocket expenses, the loss of credit, the loss of ability to purchase and benefit from a credit line,

certified mail expenses, and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with her attorneys, tracking the status of her disputes, monitoring her credit file, and mental and emotional pain and suffering.

52. Moreover, Plaintiff has been denied credit on numerous occasions as a result of Defendants' erroneous reporting of the Roundpoint trade line.

53. Due to the conduct of the Defendants, Plaintiff was forced to retain counsel to resolve the erroneous reporting of the Roundpoint trade line.

### COUNT I - VIOLATION OF THE FAIR CREDIT REPORTING ACT
#### (AGAINST ROUNDPOINT)

54. Plaintiff restates and realleges paragraphs 1 through 53 as though fully set forth herein.

55. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(c) and (b).

56. RoundPoint is a "person" as defined by 15 U.S.C. §1681a(b).

57. RoundPoint is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

58. RoundPoint violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving multiple requests for an investigation and reinvestigation from Equifax, Experian, and Plaintiff.

59. RoundPoint violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Equifax, Experian, and Plaintiff.

60. Had RoundPoint reviewed the information provided by Plaintiff, Equifax, and Experian, it would have corrected the inaccurate designation of the subject loan to Equifax and Experian. Instead, RoundPoint wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

61. RoundPoint violated 15 U.S.C. §1681s-2(b) by failing to report that the Plaintiff disputed the subject debt.

62. RoundPoint violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information on Plaintiff's files.

63. RoundPoint violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Plaintiff's disputes with Equifax and Experian.

64. RoundPoint violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to Equifax and Experian after being put on notice and discovering inaccurate reporting with respect to the subject loan.

65. RoundPoint failed to conduct a reasonable reinvestigation of its reporting of the subject loan, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit file within 30 days of receiving notice of a dispute from Equifax and Experian under 15 U.S.C. §1681i(a)(1).

66. RoundPoint violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Plaintiff by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

67. Despite the blatantly obvious errors on Plaintiff's credit files, and Plaintiff's efforts to correct the errors, RoundPoint did not correct the errors or trade line to report accurately and completely. Instead, RoundPoint wrongfully furnished false and erroneous information that the subject loan was due and owing.

68. A reasonable investigation by RoundPoint would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information continues to be reported on Plaintiff's credit file.

69. Had RoundPoint taken steps to investigate Plaintiff's valid disputes or Equifax and Experian's requests for investigation, it would have permanently corrected the erroneous credit reporting. Plaintiff provided all relevant information in her requests for investigation. Furthermore, Plaintiff's bankruptcy information is public record that is widely available and easily ascertainable.

70. By deviating from the standards established by the banking industry and the FCRA, RoundPoint acted with reckless disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax and Experian.

71. RoundPoint willfully and knowingly confirmed and reported the inaccurate information on Plaintiff's credit reports to Equifax and Experian, rendering RoundPoint liable for punitive damages. 15 U.S.C. §1681n.

WHEREFORE, Plaintiff HAZEL TAPAY ASUFRIN requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statutes;

b. Order the deletion or modification of all adverse credit reporting relating to the subject loan;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

## COUNT II - VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (AGAINST EXPERIAN)

72. Plaintiff restates and realleges paragraphs 1 through 53 as though fully set forth herein.

73. Experian is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

74. Experian is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

75. Plaintiff provided Experian with all relevant information and documentation in her requests for investigation to reflect the discharged status and $0 balances of the subject loan.

76. Experian prepared Plaintiff's credit reports containing inaccurate information by reporting the subject loan with a high balance, and a scheduled payment amount, when in fact she had received a bankruptcy discharge and owed no balance, was not in default, and was not obligated to make a monthly payment in relation to the subject loan.

77. A simple review of the documents submitted by Plaintiff would have confirmed that Plaintiff had received a discharge and no longer owed a balance, was not in default, and no longer had an obligation to make monthly payments to RoundPoint.

78. Had Experian taken *any* steps to investigate Plaintiff's valid dispute, it would have determined that the subject loan was discharged in bankruptcy.

79. Instead, Experian sent Plaintiff a correspondence stating that it had updated its records to reflect Plaintiff's bankruptcy discharge, at the same time that it willfully continued to report the inaccurate information.

80. Experian violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished regarding the Plaintiff.

13

81. Experian violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the erroneous information on Plaintiff's credit file.

82. Experian violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff and RoundPoint with regard to the subject loan.

83. Experian violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of Plaintiff's dispute.

84. Experian violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from RoundPoint that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff. The lack of notice and correction caused Plaintiff to pull her credit multiple times, only to find that the inaccurate reporting remained. The multiple necessary inquiries had a continued negative impact on Plaintiff's credit worthiness and credit score.

85. Since *all* of Plaintiff's other accounts were reported as "$0 balance owed," "included in bankruptcy," or "discharged," Experian should have investigated why the RoundPoint trade line, and only the RoundPoint trade line, still reported as "due and owing," with "a scheduled payment amount."

86. Moreover, after Plaintiff's written disputes, Experian had specific information related to Plaintiff's bankruptcy case and subsequent discharge, which included the subject loan.

87. Experian knew that the inaccurate designation of the subject loan on Plaintiff's credit report under the RoundPoint trade line indicating a high balance owed with a high monthly obligation after her bankruptcy discharge would have a significant adverse affect on Plaintiff's credit worthiness and ability to receive a "fresh start" after bankruptcy.

88. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

89. By deviating from the standards established by the credit reporting industry and the FCRA, Experian acted with reckless disregard for its duties to report accurate and complete consumer credit information.

90. It is Experian's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

91. Experian's non-compliance with the requirements of the FCRA is indicative of the reckless, willful and wanton nature of its conduct in maintaining Plaintiff's credit file and reporting Plaintiff's credit information.

92. As a result of the conduct, actions, and inaction of Experian, Plaintiff has suffered various types of damages as set forth herein, including specifically, out-of-pocket expenses, the loss of credit, the loss of ability to purchase and benefit from a credit line, certified mail expenses, and other frustration and aggravation associated with writing dispute letter, time and money expended meeting with her attorneys, tracking the status of her dispute, monitoring her credit file, and mental and emotional pain and suffering.

93. Experian's conduct was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

WHEREFORE, Plaintiff HAZEL TAPAY ASUFRIN requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Order the deletion of all adverse credit reporting;

15

c.  Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d.  Award Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e.  Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f.  Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g.  Award any other relief as this Honorable Court deems just and appropriate.

## COUNT III - VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (AGAINST EQUIFAX)

94. Plaintiff restates and realleges paragraphs 1 through 53 as though fully set forth herein.

95. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

96. Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

97. Plaintiff provided Equifax with all relevant information and documentation in her request for investigation and reinvestigation to reflect that she obtained a discharge and is no longer liable for the subject loan.

98. Equifax prepared Plaintiff's credit reports containing inaccurate information by reporting the subject loan with a scheduled payment amount, when in fact she had received a bankruptcy discharge and was not obligated to make monthly payments in relation to the subject loan.

99.  A simple review of the documents submitted by Plaintiff would have confirmed that Plaintiff had obtained a discharge on the subject loan and no longer had a hefty monthly obligation to Roundpoint.

100. Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished regarding the Plaintiff.

101. Equifax violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the erroneous information on Plaintiff's credit file.

102. Had Equifax taken *any* steps to investigate Plaintiff's valid disputes, it would have determined that the subject loan was discharged in bankruptcy.

103. Instead, Equifax sent Plaintiff a correspondence stating that it had updated its records to reflect Plaintiff's bankruptcy discharge, at the same time that it willfully continued to report the inaccurate information.

104. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff and RoundPoint with regard to the subject loan.

105. Equifax violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of Plaintiff's dispute.

106. Equifax violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from RoundPoint that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff. The lack of notice and correction caused Plaintiff to pull her credit multiple times, only to find that the inaccurate reporting remained. The multiple necessary inquiries had a continued negative impact on Plaintiff's credit worthiness and credit score.

107. Since *all* of Plaintiff's other accounts were reporting as "$0 scheduled balances owed," "included in bankruptcy," or "discharged," Equifax should have investigated why the

RoundPoint trade line, and only the RoundPoint trade line, still reported with "a scheduled payment amount."

108. Moreover, after Plaintiff's written dispute, Equifax had specific information related to Plaintiff's bankruptcy case and subsequent discharge as Plaintiff provided her Discharge Order along with her written dispute.

109. Equifax knew that the inaccurate designation of the subject loan on Plaintiff's credit report under the RoundPoint trade line indicating a high monthly obligation to RoundPoint after her bankruptcy discharge would have a significant adverse affect on Plaintiff's credit worthiness and ability to receive a "fresh start" after bankruptcy.

110. The FCRA requires that the credit reporting bureaus implement procedures and systems to promote accurate credit reporting.

111. By deviating from the standards established by the credit reporting industry and the FCRA, Equifax acted with reckless disregard for its duty to report accurate and complete consumer credit information.

112. It is Equifax's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate and report it as disputed.

113. Equifax's non-compliance with the requirements of the FCRA is indicative of the reckless, willful and wanton nature of its conduct in maintaining Plaintiff's credit file and reporting Plaintiff's credit information.

114. As a result of the conduct, actions, and inaction of Equifax, Plaintiff has suffered various types of damages as set forth herein, including specifically, out-of-pocket expenses, the loss of credit, the loss of ability to purchase and benefit from a credit line, certified mail

expenses, other frustration and aggravation associated with writing dispute letters, time and money expended meeting with her attorneys, tracking the status of her disputes, monitoring her credit file, and mental and emotional pain and suffering.

115.  Equifax's conduct was willful, rendering each liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

WHEREFORE, Plaintiff HAZEL TAPAY ASUFRIN requests that this Honorable Court:

a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.  Order the deletion of all adverse credit reporting;

c.  Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d.  Award Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e.  Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f.  Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g.  Award any other relief as this Honorable Court deems just and appropriate.

## COUNT IV – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (AGAINST ROUNDPOINT)

116.  Plaintiff restates and realleges paragraphs 1 through 53 as though fully set forth herein.

117.  Plaintiff is a "consumer" as defined by FDCPA § 1692a(3).

118.  The subject debt qualifies as a "debt" as defined by FDCPA § 1692a(5) as it arises out of a transaction for personal, family, or household purposes.

119. RoundPoint qualifies as a "debt collector" as defined by § 1692a(6) because it regularly collects debts and uses the mail and/or the telephones to collect delinquent consumer accounts.

120. RoundPoint qualifies as a "debt collector" because it acquired rights to the subject loan after it was in default. 15 U.S.C. §1692a(6).

### a. Violation of FDCPA § 1692e(8)

121. RoundPoint violated §1692e(8) by communicating false credit information to Equifax and Experian that it knew, or should have known, to be false by falsely reporting a balance on the subject loan and that the Plaintiff was still obligated to make monthly payments to it. This information was false because the subject loan was discharged and therefore Plaintiff had no further obligations to RoundPoint upon entry of her discharge.

122. 15 U.S.C. §1692e(8) also requires a debt collector to disclose the fact that a debt is disputed.

123. RoundPoint violated §1692e(8) when it failed to designate its trade line as disputed.

124. RoundPoint knew the subject debt was disputed because it received notices of Plaintiff's disputes from Experian and Equifax.

WHEREFORE, Plaintiff HAZAL TAPAY ASUFRIN requests that this Honorable Court:
a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Award the Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;
c. Award the Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1692k; and
d. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT VI - VIOLATION OF THE DISCHARGE INJUNCTION
### (AGAINST ROUNDPOINT)

125.  Plaintiff restates and realleges paragraphs 1 through 53 as though fully set forth herein.

#### a.  Section 11 U.S.C. §524(a)(2)

126.  Pursuant to 11 U.S.C. §524(a)(2), a discharge order "operates as an injunction" against acts to collect discharged debts.

127.  "Section 524(a)(2) enjoins an act to collect a discharged debt, so a creditor that attempts to collect a discharged debt is in contempt of the bankruptcy court that issued the order of discharge." *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915 (7th Cir. 2001).

128.  Punitive damages may be awarded for violations of the bankruptcy discharge, and are especially appropriate when a party acts in "clear disregard and disrespect of the bankruptcy laws." *In re Vazquez*, 221 B.R. 222, 231 (Bankr.N.D.Ill.1998). Punitive damages of four to ten times the amount of compensatory damages may be appropriate for willful violations of the bankruptcy injunction. *Id.*

#### b.  RoundPoint's conduct was perpetual, willful, and wanton

129.  RoundPoint had knowledge of the Order of Discharge and discharge injunction through multiple notices from the BNC, the public record, and directly from Plaintiff. *See* Exhibits A through E.

130.  RoundPoint violated the discharge injunction by willfully attempting to collect on the subject loan with actual notice of Plaintiff's bankruptcy and the discharged status of the subject loan.

131.  RoundPoint violated the discharge injunction by communicating false credit information to Experian and Equifax which it knew to be false in an attempt to coerce Plaintiff into paying a discharge debt.

132.  Moreover, RoundPoint's failure to update its reporting of the subject loan represents an act to collect the subject debt through coercion.

133.  RoundPoint should have implemented procedures and trained its employees to both discourage and prevent willful and wanton violations of the Bankruptcy Code.

134.  RoundPoint's conduct demonstrates that it has no such system in place to protect the rights of consumers under the protection of the Bankruptcy Code.

135.  Based on the broad language of the Bankruptcy Code, RoundPoint willfully sought to collect a debt from Plaintiff in violation of the discharge injunction, thus warranting sanctions and punitive damages to deter future conduct of a similar nature.

WHEREFORE, Plaintiff HAZEL TAPAY ASUFRIN requests that this Honorable Court:

a.  Hold RoundPoint in civil contempt of the Order or Discharge pursuant to 11 U.S.C. §§524 and 105;

b.  Order RoundPoint to pay Plaintiff for her actual damages in an amount to be determined by the court as a result of the civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§524 and 105;

c.  Order RoundPoint to pay punitive damages in an amount to be determined by the court for the civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§524 and 105;

d.  Order RoundPoint to pay Plaintiff her reasonable legal fees and expenses for violations of the Order of Discharge pursuant to 11 U.S.C.; §§524 and 105; and

e.  Provide such other and further relief as the Court may deem just and proper.

**Plaintiff demands trial by jury.**

**Dated:** October 13, 2015          **Respectfully Submitted,**

<u>/s/ Mohammed O. Badwan</u>

Mohammed O. Badwan, Esq. ARDC#6299011
*Counsel for Plaintiff*
Sulaiman Law Group, LTD
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone (630)575-8181
Fax: (630)575-8188