IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HAZEL TAPAY ASUFRIN, ) | |
| ) | Case No. 15 C 9077 |
| Plaintiff, ) | |
| ) | Judge Marvin E. Aspen |
| v. ) | |
| ) | |
| ROUNDPOINT MORTGAGE SERVICING ) | |
| CORPORATION, EXPERIAN INFORMATION ) | |
| SOLUTIONS, INC., and EQUIFAX ) | |
| INFORMATION SERVICES, LLC, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Hazel Asufrin ("Plaintiff") brings this suit against Defendants RoundPoint Mortgage Servicing Corporation ("RoundPoint"), Experian Information Solutions, Inc. ("Experian"), and Equifax Information Services, LLC ("Equifax") asserting claims under the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA") and Section 524(a)(2) of the Bankruptcy Code. Presently before us is Defendant RoundPoint's motion to dismiss (Dkt. No. 29) under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, we grant Defendant's motion in part and deny Defendant's motion in part.

**BACKGROUND**

Plaintiff's claims stem from her assertion that Defendant RoundPoint mismanaged the credit reporting of her mortgage loan after she obtained a bankruptcy discharge. In 2009, Plaintiff executed a mortgage and note for $292,890.00 ("subject debt"). (Compl. ¶ 8.) Four years later, on August 20, 2013, Plaintiff filed a Chapter 13 bankruptcy petition in the

United States Bankruptcy Court. (*Id*. ¶ 10.) On March 2, 2015, the bankruptcy court entered an order of discharge in Plaintiff's case of all dischargeable debts, including the subject debt. (*Id.* ¶ 24.) Plaintiff's bankruptcy case was closed on April 22, 2015. (*Id.* ¶ 28.)

On April 21, 2015, after receiving her order of discharge, Plaintiff pulled her Experian credit report. (*Id*. ¶ 30.) Despite Plaintiff's order of discharge, her Experian credit report revealed that RoundPoint was reporting the subject loan in default with a high balance. (*Id*. ¶ 31.) On May 19, 2015, Plaintiff sent a dispute letter to Experian, a Consumer Reporting Agency ("CRA"), requesting that her credit file be updated to reflect the zero balance and discharged status of all accounts discharged in her Chapter 13 bankruptcy. (*Id*. ¶ 32.) In her letter, Plaintiff specifically disputed the RoundPoint trade line. (*Id*.) Plaintiff requested that Experian update her credit files to reflect the discharged status of her debts. (*Id*. ¶ 33.) Plaintiff also requested that Experian "immediately activate the Automated Dispute Resolution System program" to investigate her RoundPoint account and that Experian forward investigation letters to each creditor listed in her schedule. (*Id*.) Finally, Plaintiff asked Experian to contact her if it was unable to contact her creditors. (*Id.*)

On June 8, 2015, Experian responded to Plaintiff's dispute letter stating that it had updated the trade line and balance for Plaintiff's RoundPoint account. (*Id.* ¶ 36.) The updated RoundPoint trade line now reported a current balance of $0 but continued to list an account balance of $277,190.00 and a scheduled payment amount of $2,107.00 through April 2015; a month after the debt was discharged. (*Id*. ¶¶ 37–38.) Plaintiff alleges that the updated RoundPoint trade line "was still inaccurate because reporting an 'Account Balance' and a 'Scheduled Payment Amount' inaccurately implies that Plaintiff was delinquent for the months

of March and April 2015." (*Id*. ¶ 38.) Additionally, RoundPoint's trade line failed to mark the trade line as disputed. (*Id*. ¶ 39.)

On May 19, 2015 Plaintiff also sent a credit dispute letter to Equifax, another CRA, disputing her RoundPoint trade line. (*Id*. ¶ 40.) As with her dispute letter to Experian, Plaintiff enclosed her order of discharge and asked that Equifax update the RoundPoint trade line to report a current balance of $0, activate the Automated Dispute Resolution System program and investigate the RoundPoint account. (*Id.* ¶ 41.) Plaintiff additionally requested that Equifax forward her dispute to Roundpoint and other listed creditors and inform her if it was unable to do so. (*Id*.)

On June 20, 2015, Equifax responded that it had verified Plaintiff's account information. (*Id*. ¶ 44.) Despite verifying Plaintiff's RoundPoint account, RoundPoint and Equifax were still reporting a scheduled payment amount of $2,107.00 and failed to state that the subject debt was disputed. (*Id*. ¶¶ 45, 47.)

Plaintiff contends that the inaccurate reporting had a "significant adverse effect on Plaintiff's credit rating and her ability to obtain financing." (*Id*. ¶ 50.) She additionally alleges that as a result of the inaccurate reporting: she has suffered out-of-pocket expenses, certified mail expenses, the loss of credit, the loss of the ability to purchase and benefit from a credit line, she was denied credit, and she has suffered frustration and aggravation from the entire ordeal. (*Id*. ¶¶ 50–51.)

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to "test the sufficiency of the complaint, not to decide the merits" of the case. *Gibson v. City of Chi*., 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). In evaluating a motion to dismiss, we

must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011); *Thompson v. Ill. Dep't. of Prof'l. Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must include a short and plain statement of the claim, showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Accordingly, a court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks "enough facts to state a claim [for] relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697, 129 S. Ct. 1937, 1960 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1955). Although a facially plausible claim need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1955). These requirements ensure that "the defendant [receives] fair notice of what the . . . claim is and the grounds upon which it rests . . . ." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (2007)).

Defendant's motion also challenges our jurisdiction and thus falls under Federal Rule of Civil Procedure 12(b)(1). Rule 12(b)(1) requires dismissal of claims over which the federal

court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Jurisdiction is the "power to decide" and must be conferred upon the federal court. *In re Chi., Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). In reviewing a Rule 12(b)(1) motion, we may look beyond the complaint to other evidence submitted by the parties to determine whether subject matter jurisdiction exists. *See United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). A plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met. *See Kontos v. U.S. Dep't Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

## ANALYSIS

Plaintiff brings three claims against Defendant RoundPoint: (1) violation of the FCRA, (2) violation of the FDCPA, and (3) violation of the discharge injunction under the Bankruptcy Code. We discuss each claim in turn below.

### I. Violation of the Fair Credit Reporting Act (FCRA) – Count I

Plaintiff alleges that Defendant RoundPoint violated numerous provisions of the FCRA by: (1) failing to conduct an investigation in response to Plaintiff's dispute letters to Equifax and Experian, (2) failing to review all materials supplied by Equifax and Experian, (3) failing to label the subject debt as disputed, (4) failing to modify the inaccurate information in Plaintiff's account, (5) failing to report investigation results to Equifax and Experian, and (6) failing to conduct a reasonable reinvestigation within 30 days of receiving notice of the dispute. (Compl. ¶¶ 58–59, 61–66.)

The FCRA sets forth duties of those who furnish credit information. 15 U.S.C. § 1681s–2(b). Under the FCRA, after a furnisher, like Defendant, receives notice from a CRA that a consumer disputes the information provided by the furnisher to the CRA, the furnisher must

conduct a reasonable investigation and report the results of that investigation back to the CRA.

15 U.S.C. §§ 1681i(a)(2), 1681s–2(b). *See also Lang v. TCF Nat. Bank*, 249 Fed. Appx. 464, 465 (7th Cir. 2007); *Westra v. Credit Control*, 409 F.3d 825, 827 (7th Cir. 2005).

### a. Notice of a Dispute from a CRA

A furnisher's duty is only triggered after receiving notice of a dispute from a CRA. *Ginnan v. Guaranteed Rate, Inc.*, No. 15 C 5813, 2016 WL 302146, at *2 (N.D. Ill. Jan. 25, 2016); *Rollins v. Peoples Gas Light & Coke Co.*, 379 F. Supp. 2d 964, 967 (N.D. Ill. 2005). Accordingly, district courts in this circuit have held that to survive a motion to dismiss a plaintiff must allege that a CRA informed furnisher-defendant of the dispute.[1] *See Neiman v. Chase Bank, USA, N.A.*, No. 13 C 8944, 2014 WL 3705345, at *7 (N.D. Ill. July 25, 2014) (compiling cases in this district). After receiving notice of the dispute, the furnisher is required to:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by [the CRA];

(C) report the results of the investigation to the [CRA]; and

D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

---

[1] We are aware of an unpublished Seventh Circuit case that held that under federal notice pleading standards, a plaintiff need not explicitly plead that a CRA provided the defendant notice of a dispute. *Lang*, 249 F. App'x. at 466. Because we find that Plaintiff has alleged that CRAs Experian and Equifax informed Defendant of the dispute, we need not determine whether *Lang* controls.

15 U.S.C. § 1681s–2(b); *see also Varnado v. Trans. Union, LLC,* No. 3 C 6937, 2004 WL 1093488, at *2 (N.D. Ill. April 29, 2004); *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 925 (N.D. Ill. 2000).

Here, we find that Plaintiff has sufficiently alleged that Defendant was notified by both Experian and Equifax of Plaintiff's dispute, so as to trigger its responsibilities under 15 U.S.C. § 1681s–2(b). Plaintiff alleges that she sent written dispute letters to both CRAs, she asked the CRAs to forward her dispute and enclosures to RoundPoint, and she requested that the CRAs inform her in the event that they were unable to forward the information to RoundPoint. (Compl. ¶¶ 33, 41.) Additionally, Plaintiff alleges "on information and belief" that RoundPoint received notice from the CRAs.[2] (*Id.* ¶¶ 35, 43.) Plaintiff also alleges that in response to her dispute letter, Equifax informed Plaintiff that it had verified the subject debt with RoundPoint. (*Id.* ¶ 44.) Finally, Plaintiff alleges that "RoundPoint violated [the FCRA] . . . after receiving multiple requests for an investigation and reinvestigation from Equifax, Experian." (*Id.* ¶¶ 59–60.)

---

[2] Courts are split as to whether a plaintiff survives a motion to dismiss when he alleges by "information and belief" that a CRA notified defendant furnisher of a dispute. *Densmore v. Gen. Motors Acceptance Corp.*, No. 03 C 1866, 2003 WL 22220177, at *2 (N.D. Ill. Sept. 25, 2003) (dismissing plaintiff's complaint where plaintiff alleged "on information and belief" that defendant was notified of plaintiff's dispute by a CRA); *Brown v. Bank One Corp.*, No. 1 C 4698, 2002 WL 31654950, at *2 (N.D. Ill. Nov. 22, 2002) ("For purposes of satisfying the liberal pleading requirements of Fed. R. Civ. P. 8, it is sufficient for plaintiffs to allege that on 'information and belief' [defendant] was notified of the credit dispute by one or more credit reporting agencies.") However, because Plaintiff has explicitly alleged elsewhere in the complaint that Defendant furnisher "received multiple requests from [CRAs] for an investigation," (Compl. ¶¶ 59–60), we need not determine whether a notice allegation based only on "information and belief" survives a motion to dismiss. *See Schlotfeldt v. Wells Fargo*, No. 15 C 6656, slip op. at 7 (N.D. Ill. Feb. 3, 2016) (denying motion to dismiss for failure to allege CRA notified defendants of dispute where plaintiffs alleged defendants "fail[ed] to conduct an investigation . . . after receiving requests for investigation from [CRAs]); *Smuk v. Bank of Am., N.A.*, No. 15 C 6242, slip op. at 5 (N.D. Ill. Feb. 2, 2016) (holding that plaintiff did allege that defendant received notice of dispute from CFA; plaintiff's complaint stated that defendant violated the FCRA "after receiving notice of a dispute" from CRAs).

b. *§ 1681s–2(b)*

Because Plaintiff alleges that both Experian and Equifax notified Defendant of Plaintiff's dispute, Defendant is subject to the requirements outlined in § 1681s–2(b). *Rollins*, 379 F. Supp. 2d at 967; *Ginnan*, 2016 WL 302146, at *2. We next consider whether Defendant has violated any of its obligations under the statute.

i. Accuracy of Credit Reporting

Defendant contends that even if Plaintiff sufficiently alleged that the CRAs notified Defendant of Plaintiff's dispute, Plaintiff's claim fails because Roundpoint's credit reporting was accurate and reported a $0 account balance. (Mot. at 7.) Plaintiff's credit report was modified to show an account balance of $0,[3] however, Plaintiff sufficiently alleges other inaccuracies in Defendant's reporting to survive a motion to dismiss.[4] As to her Experian credit report, Plaintiff alleges that RoundPoint continued to inaccurately report that the subject debt had an account balance and a scheduled payment amount for March 2015 and April 2015, after the subject debt was discharged. (Compl. ¶ 37.) Similarly, Plaintiff asserts that Defendant inaccurately reported to Equifax a scheduled payment of $2,107.00. (*Id*. ¶ 46.) Additionally, Plaintiff asserts that after reporting the dispute to the CRAs, and after the CRAs notified Defendant of the dispute, Defendant's trade lines were still inaccurate. (*Id*. ¶ 60.) These assertions support the reasonable inference that Defendant failed to investigate, reinvestigate or properly report disputed

---

[3] We note that courts have held that "inaccurate" information in the context of a FCRA complaint "refers to information that is either factually incorrect or creates a misleading impression." *Hillis v. Trans Union, LLC*, 969 F. Supp. 2d 419, 421 (E.D. Pa. 2013); *see also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009); S*aunders v. Branch Banking & Trust Co. of VA*, 526 F.3d 142, 148 (4th Cir. 2008); *Sepulvado v. CSC Credit Servs.*, 158 F.3d 890, 895 (5th Cir. 1998); *Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1004 (N.D. Ill. 2009).

[4] At this stage, we only consider whether Plaintiff has sufficiently alleged a violation of 15 U.S.C. § 1681s-2(b) and do not question whether Defendant's investigation was reasonable. *Westra,* 409 F.3d at 827.

information.  *See Dornhecker*, 99 F. Supp. 2d at 928 ("Contrary to [defendant's] assertion, [plaintiff] does specifically allege that after notifying [the CRA] that he disputed the credit information, he nevertheless continued to receive letters from the collection agency attempting to collect the [subject] debt.  Drawing all reasonable inferences [in plaintiff's] favor, this paragraph may be read as establishing that the inaccurate information was never rectified, and is therefore sufficient to allege that [defendant] failed to properly investigate the dispute.")

        *c. Damages*

Under the FCRA, a furnisher can be held civilly liable for both willful and negligent noncompliance.  15. U.S.C. §§ 1681n, 1681o.  If a violation is negligent, a furnisher is liable for actual damages.  15. U.S.C. § 1681o.  If a violation is "willful," the furnisher may be liable for actual damages or statutory damages, along with punitive damages.  15. U.S.C. § 1681n.  Accordingly, claims for negligent noncompliance require a showing of actual damages while claims for willful noncompliance do not.  *Murray v. Sunrise Chevrolet, Inc.*, 441 F. Supp. 2d 940, 949 (N.D. Ill. 2006); 15 U.S.C. §§ 1681n, 1681o.  Defendant argues that Plaintiff alleges "implausible actual damages" and has failed to sufficiently allege a willful violation.  (Mot. at 8–10.)

        i. Willful noncompliance

To establish a willful violation of the FCRA, a plaintiff must allege that defendant knowingly or recklessly violated provisions of the FCRA.  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57, 127 S. Ct. 2201, 2209 (2007); *Taylor v. Screening Reports, Inc.*, No. 13 C 02886, 2015 WL 4052824, at *6 (N.D. Ill. July 2, 2015).  "Willfulness may be established by showing that the defendant knew that its actions violated a FCRA requirement or acted in reckless disregard as to whether its actions violated a FCRA requirement."  *Taylor*,

2015 WL 4052824, at *6 ("Thus, to either knowingly or recklessly violate a FCRA requirement, a defendant must have been aware of the requirement at the time of the challenged conduct."). At this stage, plaintiff need only "plausibly suggest" a willful violation.[5] *Iosello v. Leiblys, Inc.*, 502 F. Supp. 2d 782, 784–85 (N.D. Ill. 2007) (citation omitted) (denying defendant's motion to dismiss willful noncompliance claim where plaintiff alleged that defendant knew or should have known of statute's requirements since there were multiple public statements made to the media about compliance with the statute and many of defendant's peers and competitors complied with the statute's requirements); *see also Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 624–65 (7th Cir. 2007) (finding that plaintiffs sufficiently alleged a willful violation; plaintiffs asserted that defendant violated the FCRA and did so willingly); *Lavey v. RadioShack Corp.*, No. 13 C 05818, 2014 WL 2819037, at *2 (N.D. Ill. June 23, 2014) (finding that complaint sufficiently alleged willfulness because "it aver[ed] that [defendant] was on notice of the [FCRA] requirement and thus it [was] plausible to infer either a knowing or reckless violation from the facts pleaded"); *Solimen v. Morton Coll.*, No. 13 C 1962, 2013 WL 4805004, at *3 (N.D. Ill. Sept. 9, 2013) (holding that plaintiff sufficiently alleged willful noncompliance at the motion to dismiss stage where plaintiff alleged that defendant "uniformly fail[ed]" to follow the FCRA); *Murray v. E*Trade Fin. Corp.*, No. 5 C 5433, 2006 WL 2054381, at *3 (N.D. Ill. July 19, 2006) (denying defendant's motion to dismiss willful noncompliance claim where plaintiff alleged a violation; defendant was presumed to know the law).

In her complaint, Plaintiff alleges that "[d]espite the blatantly obvious errors on Plaintiff's credit files, and Plaintiff's efforts to correct the errors, [Defendant] did not correct the

---

[5] Generally, a willfulness determination involves facts beyond the pleadings and cannot be resolved on a motion to dismiss. *Romano v. Active Network, Inc.*, No. 09 C 1905, 2009 WL 2916838, at *4 (N.D. Ill. Sept. 3, 2009).

errors." (Compl. ¶ 67.) Additionally, she alleges that Defendant "deviat[ed] from the standards established by the banking industry and the FCRA," and in doing so, "acted with reckless disregard for its duty as a furnisher." (*Id.* ¶ 70.) Finally, Plaintiff asserts that Defendant "willfully and knowingly confirmed and reported inaccurate information on Plaintiff's credit reports." (*Id.* ¶ 71.) Throughout her complaint, Plaintiff alleges that Defendant knew its credit line was in dispute yet failed to correct the information, as is required under the FCRA. (*Id.* ¶¶ 60, 67–71.) We find that Plaintiff's allegations as to willfulness survive at this stage.[6] Accordingly, Defendant's motion to dismiss the FCRA claim is denied.[7]

---

[6] Defendant relies on an unpublished opinion, *Smith v. Safeco Ins.,* No. 13 C 2788, 2013 WL 5609323, at *2 (N.D. Ill. Oct. 11, 2013), to support its assertion that Plaintiff has failed to allege willfulness. (Mot. at 8.) In *Smith*, the court held that plaintiff "must provide factual allegations concerning [defendant's] state of mind" to support a claim for willful noncompliance of the FCRA. *Smith*, 2013 WL 5609323, at *2. *Smith*, however, is easily distinguishable from the case at hand. There, plaintiff sought damages under a different section of the FCRA, 15 U.S.C. § 1681b. *Id*. Section § 1681b prohibits companies from pulling a consumer's credit report "without a permissible purpose." 15 U.S.C. § 1681b. Because defendant argued that the credit report was pulled for a "permissive purpose," plaintiff failed to allege that defendant knew that the report was impermissibly pulled. *Smith,* 2013 WL 5609323, at *1 ("It is also possible that [defendant] pulled [plaintiff's] credit reports by mistake . . . there is no factual support for an inference that [defendant] acted knowingly or with reckless disregard.") Because pulling a credit report is not a per se violation of the FCRA, the plaintiff in *Smith* was required to assert that defendant knew or should have known that the report was pulled for an impermissible purpose in violation of the FCRA. Here, on the other hand, Plaintiff alleges that Defendant continued to report inaccurate information after receiving notice of a dispute from CRAs, in direct violation of the statute. These allegations are sufficient "to support an inference that [defendant] acted knowingly or with reckless disregard." *Id*.

[7] Defendant argues that since Plaintiff cannot support a claim for willful compliance, she must allege actual damage in order to support a negligent noncompliance claim. (Mot. at 9.) As addressed above, we find that Plaintiff sufficiently alleges a claim for willful noncompliance, and thus, need not allege actual damages to support her claim. *Murray v. GMAC Mort. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006); *Romano*, 2009 WL 2916383, at *4; *Hernandez v. Chase Bank USA, N.A.*, 429 F. Supp. 2d 983, 989 (N.D. Ill. 2006). Additionally, according to the complaint, Plaintiff does not assert a negligent noncompliance claim.

## II. Violation of the Fair Debt Collection Practices Act (FDCPA) – Count IV

In addition to her FCRA claim, Plaintiff asserts a claim against Defendant under the FDCPA for communicating false credit information. The FDCPA prohibits debt collectors from engaging in abusive, deceptive, or unfair debt-collection practices. 15 U.S.C. § 1692 *et seq*. To support a FDCPA claim, a plaintiff must first assert two threshold criteria: (1) that the defendant is a "debt collector;" and (2) the alleged conduct was "in connection with the collection of [a] debt." 15 U.S.C. § 1692e; *Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 384 (7th Cir. 2010); *Saccameno v. Ocwen Loan Serv., LLC*, No. 15 C 1164, 2015 WL 7293530, at *3 (N.D. Ill. Nov. 19, 2015).

Here, the parties do not dispute that Defendant is a "debt collector" under the statute. Instead, our inquiry will focus on whether Defendant's alleged conduct "was in connection with the collection of [a] debt." The Seventh Circuit has concluded that the question of whether a "communication is made in connection with the collection of a debt" is an objective one. *Ruth v. Triumph P'ship*, 577 F.3d 790, 798 (7th Cir. 2009). "A communication is made in connection with the collection of a debt," then, if "the unsophisticated consumer recognizes [the communication] as such." *Id*. Generally, courts have held that a communication is not made in connection with the collection of a debt if the communication does not demand payment, but instead merely informs the consumer of the current status of his account. *Compare Bailey v. Sec. Nat. Serv. Corp.*, 154 F.3d 384, 388–89 (letter informing plaintiff of current status of account and future due dates was not "made in connection with the collection of a debt"), *with Horkey v. J.V.D.B. & Assoc.,* 33 F.3d 769, 774 (7th Cir. 2003) (communication made specifically to induce debtor to pay off debt triggers protections outlined in the FDCPA), *and Ruth*, 577 F.3d at 798–99 (communication was "made in connection with a collection of debt" where debt collector only

sent materials in an attempt to collect debt). The purpose and context of the communications are also relevant in determining if the communication triggers FDCPA protections. *Compare Bailey*, 154 F.3d at 388 (because there was an existing forbearance agreement in place, debt collector had reason to contact debtor other than to collect debt so FDCPA did not apply), *with Horkey*, 33 F.3d at 774 (purpose of communication was to harass and threaten the debtor into settling her debt), *and Ruth*, 577 F.3d at 799 (denying defendants' motion for summary judgement because "[t]he only relationship the defendants had with the plaintiffs arose out of . . . the plaintiffs' defaulted debt.") Additionally, courts have held that communications in response to FCRA disputes are not "made in connection with the collection of a debt." *McIvor v. Credit Control Serv., Inc.*, 987 F. Supp. 2d 968, 971 (D. Minn. 2013); *Edeh v. Midlands Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1036 (D. Minn. 2010) ("[A] debt collector is required by the FCRA to verify a debt to a CRA after the CRA notifies the debt collector that the debt is in dispute. It makes little sense to view such a verification as a prohibited attempt at debt collection. The debt collector is acting not on its own initiative, but in response to a notice sent by the CRA, and the debt collector is responding to that notice not to collect a debt, but to avoid violating the FCRA.")

Plaintiff has failed to allege that Defendant's underlying communications "were made in connection with the collection of a debt." First, Plaintiff does not specifically allege that Defendant's "communications were made in connection with a debt collection," as is required to trigger protections in the FDCPA. Additionally, a review of the complaint reveals that the allegedly inaccurate credit reports did not demand payment from Plaintiff; the communications were sent directly to the CRAs. (Compl. ¶¶ 36, 44.) Also, Defendant sent the credit information to the CRAs in response to a request under the FCRA (as requested by Plaintiff), not to collect a

debt. Defendant was under a legal duty to send the information under the FCRA after plaintiff initiated review through her dispute. As such, we find that it cannot be said that Defendant was sending the credit report "in connection with a collection of a debt."[8] Defendant's motion to dismiss is granted as to Count IV.

### III. Violation of the Discharge Injunction – Count VI

Finally, Plaintiff brings a claim under section § 524 of the Bankruptcy Code for a violation of the discharge injunction. Defendant seeks a dismissal under Rule 12(b)(1) for lack of jurisdiction. We find that we do not have jurisdiction over this claim and grant Defendant's motion.

In this circuit, the sole remedy for a violation of § 524 is a contempt action brought in the bankruptcy court that issued the order of discharge. *Cox v. Zale Del., Inc*., 239 F.3d 910, 917 (7th Cir. 2001); *Peeples v. Blatt*, No. 00 C 7028, 2001 WL 921731, at *5 (N.D. Ill. Aug. 15, 2001). Accordingly, we dismiss Count VI for want of jurisdiction. Plaintiff may refile this claim in the appropriate bankruptcy court. *Peeples*, 2001 WL 921731, at *5.

---

[8] Plaintiff relies on bankruptcy court cases discussing violations of a discharge injunction to support her claim that Defendant's reporting constitutes "communications made in connection with a collection of a debt" under the FDCPA. (Reply at 10.) Plaintiff argues that "[i]f inaccurate credit reporting violates the bankruptcy discharge because it is an attempt to collect a debt, then that same conduct is an attempt to collect a debt under the FDCPA." (*Id*.) We disagree and find no authority to support Plaintiff's assertion. Instead, we rely on binding authority in this circuit directly discussing the FDCPA.

## CONCLUSION

For the reasons discussed in detail above, we grant Defendant's motion to dismiss Counts IV and VI, but deny the motion on Count I. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: March 17, 2016
      Chicago, Illinois